IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TAMI STEPHENSON and ROBERT CZARNIK, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br><br>vs.<br><br><br>ALL RESORT COACH, INC.,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br><br>Case No. 2:12-CV-1097 TS |

This matter is before the Court on Defendant's Motion for Partial Summary Judgment, Plaintiffs' Rule 56(d) Motion, and Plaintiffs' Motion for Order Permitting Plaintiffs to Proceed as a Collective Action and to Facilitate Notice. For the reasons discussed below, the Court will grant Defendant's Motion for Partial Summary Judgment, deny Plaintiffs' Rule 56(d) Motion, and deny without prejudice Plaintiffs' Motion for Order Permitting Plaintiffs to Proceed as a Collective Action and to Facilitate Notice.

## I.  BACKGROUND

The following facts are taken largely from Defendant's Motion for Partial Summary Judgment. Instead of responding directly to many of the statements of fact presented in

Defendant's Motion, Plaintiffs argue that the facts are not relevant.  Because Plaintiffs do not actually dispute those facts they consider irrelevant, the Court will consider them undisputed for the purposes of Defendant's Motion for Partial Summary Judgment.[1]

Lewis Stages is a registered dba of All Resort Coach, Inc., which provides bus passenger transportation and tour services in Utah and surrounding Western states.  Plaintiff Czarnik was employed as a driver by Lewis Stages from January 9, 2007, until February 28, 2011.  Plaintiff Stephenson was employed as a driver by Lewis Stages from July 27, 2006, until April 15, 2012.

Plaintiffs drove three types of buses for Lewis Stages.  All of the buses driven by Plaintiffs hold more than eight and up to 56 passengers, and weigh more than 10,001 pounds. Lewis Stages' bus drivers, including Plaintiffs, are required, as a condition of employment, to comply with regulations of the Federal Motor Carrier Safety Administration.

Lewis Stages provides passenger transportation services for compensation in Utah, Nevada, Wyoming, Idaho, California, and Colorado.  All drivers, including Plaintiffs, were at all times in the course of their employment subject to being assigned trips that would take them across state lines.

Lewis Stages maintains Driver Duty Summary Reports for its drivers, which detail the trips each driver makes.  During their employment, Plaintiffs drove buses on various trips to out-of-state destinations.  Plaintiff Stephenson's interstate trips constituted 2.9% of her total trips, while Plaintiff Czarnik's interstate trips constituted 4% of his total trips.

---

[1]*See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").

Lewis Stages enters into contracts with its customers for bus transportation.  As part of certain contracts, customers are required to pay a base rate and service fee to All Resort's Sales Office.  Depending on the customer and the trip, the service fee ranges from five to twenty percent of the base rate.  For each service fee received from the customer, Lewis Stages pays the driver 75% or 80% of the service fee and retains 20% or 25%.  The total payment received by All Resort from the customer, including the base rate, any service fee, and any non-cash gratuity, is considered revenue to Lewis Stages.

The drivers, including Plaintiffs, retain all of the cash tips they receive from passengers. At all times during Plaintiffs' employment and through the present date, Lewis Stages has not taken a "tip credit."  In other words, Lewis Stages does not claim a credit based on tips, partial or otherwise, to meet minimum wage requirements.

At all relevant times, Defendant did not have any tip pooling arrangement with Plaintiffs. Further, Defendant did not advise Plaintiffs of any tip pooling arrangement.

Plaintiffs bring claims under the Fair Labor Standards Act ("FLSA") for failing to pay minimum wage, failing to pay overtime pay, and retaining non-cash tips.  Plaintiffs also bring common law claims for conversion, unjust enrichment, and quantum meruit.  In addition, Plaintiffs seek to bring a collective action.  Defendant opposes Plaintiffs' request to bring a collective action and seeks summary judgment on all but Plaintiffs' first claim for relief.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.[2]  In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[3]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[4]

## III.  DISCUSSION

### A.  MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant seeks summary judgment on Plaintiffs' FLSA claims concerning its alleged failure to pay overtime pay and retaining non-cash tips, as well as Plaintiffs' common law claims of conversion, unjust enrichment, and quantum meruit.  Each claim will be discussed below.

#### 1.  Overtime Pay

Defendant argues that Plaintiffs fall under an exemption to the FLSA's overtime provisions and, therefore, their claim must be dismissed.  "It is the employer's burden to prove that an employee falls 'plainly and unmistakably' within a FLSA exemption."[5]  "In addition,

---

[2]Fed. R. Civ. P. 56(a).

[3]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[4]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[5]*Maestas v. Day & Zimmerman, LLC,* 664 F.3d 822, 826 (10th Cir. 2012) (quoting *Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1184 (10th Cir. 2004)).

exemptions under the FLSA 'are to be narrowly construed against the employers seeking to assert

them and their application limited to those establishments plainly and unmistakably within their

terms and spirit.'"[6]

Section 207 of the FLSA mandates that workers receive overtime pay, subject to certain

exemptions.  One such exemption is the Motor Carrier Act ("MCA") exemption.  29 U.S.C. §

213(b)(1) provides that section 207 does not apply to "any employee with respect to whom the

Secretary of Transportation has power to establish qualifications and maximum hours of service

pursuant to the provisions of section 31502 of Title 49."[7]

"An employee of a private motor carrier is subject to the power of the Secretary of

Transportation, and therefore exempt from the FLSA, if the employee in the performance of his

duties moves goods [or passengers] in interstate commerce and affects the safe operation of

motor vehicles on public highways."[8]

> A driver is considered to be driving in interstate commerce if the driver is called
> upon to drive in interstate commerce as part of the driver's regular employment,
> or, even if the driver has not personally driven in interstate commerce, if, because
> of company policy and activity, the driver could reasonably be expected to drive
> in interstate commerce.  As such, if a carrier does interstate work and assigns

---

[6]*Rodriguez*, 360 F.3d at 1184 (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

[7]29 U.S.C. § 213(b)(1).

[8]*Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 672 (10th Cir. 1993); *see also* 29 C.F.R. § 782.2(a) (The MCA exemption extends to those "who: (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act . . . , and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.").

drivers randomly to that driving, all of its drivers are considered subject to the Motor Carrier Safety Act.[9]

However,

where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply to him in any workweek so long as there is no change in his duties.[10]

Plaintiffs argue that the time they spent driving out of state was de minimis and therefore they are not exempt from the FLSA's overtime requirement.  Plaintiffs rely on *Coleman v. Jiffy June Farms, Inc.*[11] and *Kimball v. Goodyear Tire & Rubber Co.*,[12] in support of their argument that the MCA exemption to the FLSA does not apply.

In both *Coleman* and *Kimball*, the drivers spent little time making interstate trips.  In *Coleman*, the interstate deliveries constituted .23% of all deliveries of the defendant's business.[13] When divided up among the defendant's 67 drivers, each driver would spend .00343% of his or her time in interstate commerce.[14]  In *Kimball*, the interstate trips represented 0.1437% of the

---

[9]*Bishop v. Petro-Chem. Trans., LLC*, 582 F. Supp. 2d 1290, 1298 (E.D. Cal. 2008).

[10]29 C.F.R. § 782.2(b)(3) (citing *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695 (1947)).

[11]324 F. Supp. 664 (S.D. Ala. 1970), *aff'd per curiam*, 458 F.2d 1139 (5th Cir.), *cert. denied*, 409 U.S. 948 (1972).

[12]504 F. Supp 544 (E.D. Tex. 1980).

[13]*Coleman*, 324 F. Supp. at 666.

[14]*Id*. at 669.

total hauls made by the defendant.[15]  The average interstate travel for each employee was

0.004%.[16]  In addition to the limited interstate travel, the defendants in both cases were not

primarily involved in transportation.  Rather, transportation was incidental to their primary

activities.

      Both the Supreme Court and the Tenth Circuit have made clear that it is the character of a

plaintiff's activities, rather than the proportion of either the plaintiff's time or of his activities

that determines the applicability of the MCA exemption.[17]  "As a practical matter it is not the

amount of time an employee spends in work affecting safety, rather it is what he may do in the

time thus spent, whether it be large or small, that determines the effect on safety."[18]

Thus, "[t]he factual question to be decided is not whether a substantial part of [the employee's]

duties affected the safety of operations but, rather, whether any of [the employee's] duties had a

*substantial effect* on motor vehicle safety."[19]

      In this case, the facts show that Defendant provides bus passenger transportation and tour

services in Utah and surrounding Western states.  Plaintiffs worked as drivers for Defendant and,

like the other drivers employed by Defendant, were at all times in the course of their employment

---

[15]*Kimball*, 504 F. Supp. at 546.

[16]*Id*. at 547.

[17]*Morris v. McComb*, 332 U.S. 422, 431-32 (1947); *Starrett v. Bruce*, 391 F.2d 320, 323 (10th Cir. 1968).

[18]*Starrett*, 391 F.2d at 323.

[19]*Crooker v. Sexton Motors, Inc.*, 469 U.S. 206, 209 (1st Cir. 1972) (quoting *Yellow Transit Freight Lines, Inc. v. Blaven*, 320 F.3d 495, 498 (8th Cir. 1963)).

subject to being assigned trips that would take them across state lines.  Plaintiffs did, in fact, make several interstate trips.  Defendant has provided evidence that Plaintiff Stephenson's interstate trips constituted 2.9% of her total trips, while Plaintiff Czarnik's interstate trips constituted 4% of his total trips.

These facts distinguish Plaintiffs from the drivers in *Coleman* and *Kimball*.  Plaintiffs, as drivers who were expected to drive and actually did drive interstate trips, "engage[d] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce."[20]  Therefore, the Court finds that the MCA exemption applies and summary judgment will be granted on Plaintiff's FLSA overtime claim.

2.    *Non-Cash Tips*

Plaintiffs next allege that Defendant violated § 203(m) of the FLSA by retaining non-cash tips.  Plaintiffs argue that they had a property right in all non-cash tips.

Section 203(m) states, in pertinent part:

In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to--
(1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
(2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.
The additional amount on account of tips may not exceed the value of the tips actually received by an employee.  The preceding 2 sentences shall not apply with

---

[20]29 C.F.R. § 782.2(a).

respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.[21]

The Ninth Circuit Court of Appeals recently described this provision as follows:

> The first sentence states that an employer must pay a tipped employee an amount equal to (1) a cash wage of at least $2.13, plus (2) an additional amount in tips equal to the federal minimum wage minus such cash wage. That is, an employer must pay a tipped employee a cash wage of at least $2.13, but if the cash wage is less than the federal minimum wage, the employer can make up the difference with the employee's tips (also known as a "tip credit"). The second sentence clarifies that the difference may not be greater than the actual tips received. Therefore, if the cash wage plus tips are not enough to meet the minimum wage, the employer must "top up" the cash wage. Collectively, these two sentences provide that an employer may take a partial tip credit toward its minimum-wage obligation.
> The third sentence states that the preceding two sentences do not apply ( *i.e.*, the employer may not take a tip credit) unless two conditions are met. First, the employer must inform the employee of the tip-credit provisions in section 203(m). Second, the employer must allow the employee to keep all of her tips, except when the employee participates in a tip pool with other customarily tipped employees.[22]

As set forth above, Defendants have required that certain customers pay a service fee. For purposes of this Motion, Defendant accepts as true Plaintiffs' assertion that these fees constitute tips.[23] Defendant does not argue in its Motion, as Plaintiffs state, that these were service charges, though Defendant has reserved the right to make such an argument in the future. Depending on the customer and the trip, the service fee ranges from five to twenty percent of the

---

[21]29 U.S.C. § 203(m).

[22]*Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 580 (9th Cir. 2010).

[23]Docket No. 18, at 5 n.50.

base rate.  For each service fee received from the customer, Defendant pays the driver 75% or

80% of the service fee and retains 20% or 25%.  Defendant did not have a tip pooling agreement

with Plaintiffs.  However, it is undisputed that Defendant has never taken a tip credit.  That is,

Defendant does not claim a credit based on tips, partial or otherwise, to meet the federal

minimum wage requirements.  Plaintiffs acknowledge that they were paid above the federal

minimum wage.[24]

Courts interpreting § 203(m) have held that where an employer does not take a tip credit,

no § 203(m) violation has occurred.[25]  It is only when an employer takes a tip credit that

compliance with § 203(m) is required.  As the Ninth Circuit has explained, the third sentence of

§ 203(m) "imposes *conditions* on taking a tip credit and does not state freestanding *requirements*

---

[24]Docket No. 15, Ex. A, ¶¶ 6-7; *Id.* Ex. B ¶¶ 6-7.

[25]*Cumbie*, 596 F.3d at 581 ("Since Woo did not take a tip credit, we perceive no basis for concluding that Woo's tippooling arrangement violated section 203(m)."); *Platek v. Duquesne Club*, 961 F. Supp. 831, 834 (W.D. Penn. 1994) ("Examining the language of § 3(m), the Court finds that the section plainly does not apply unless the employer seeks to claim the tip credit. Only if the employer seeks to claim the tip credit and fails to meet the conditions set forth in § 3(m) may the employer violate the provisions of § 3(m).  Therefore, because the employer in this case has elected not to claim the tip credit set forth in § 3(m), the Court finds that it cannot violate § 3(m) as a matter of law."); *cf Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002) ("Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips.  Congress gave employers of tipped employees a simple choice: either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.") (internal citation omitted).

pertaining to all tipped  employees."[26]  "A statute that provides that a person must do *X in order to achieve Y* does not mandate that a person must do *X*, period."[27]

Plaintiffs assert that all tips are the property of the drivers and that Defendant is prohibited from using tips for any reason other than that permitted under § 203(m).  The plaintiff in *Cumbie* similarly argued "that under section 203(m), an employee must be allowed to retain all of her tips—except in the case of a 'valid' tip pool involving customarily tipped employees—regardless of whether her employer claims a tip credit."[28]

The Ninth Circuit rejected this argument, explaining that "[i]f Congress wanted to articulate a general principle that tips are the property of the employee absent a 'valid' tip pool, it could have done so without reference to the tip credit."[29]  Since Congress did not, the court "decline[d] to read the third sentence in such a way as to render its reference to the tip credit, as well as its conditional language and structure, superfluous."[30]  Thus, since the employer did not take a tip credit, there was no violation of § 203(m).

The Court finds this reasoning persuasive.  The language and structure of § 203(m) reveal that compliance with the requirements of that provision are only required when an employer takes a tip credit.  The statute does not impose a freestanding requirement pertaining to all tipped

---

[26]*Cumbie*, 596 F.3d at 581.

[27]*Id*.

[28]*Id*. at 580.

[29]*Id*. at 581.

[30]*Id*.

employees.  In this case, it is undisputed that Defendant has not taken a tip credit.  Therefore,

under *Cumbie* and the other cases discussed, there is no violation of § 203(m).

Plaintiffs point to the recently amended 29 C.F.R. § 531.52 in further support of their

claim.  That regulation states:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some
> service performed for him.  It is to be distinguished from payment of a charge, if
> any, made for the service.  Whether a tip is to be given, and its amount, are
> matters determined solely by the customer, who has the right to determine who
> shall be the recipient of the gratuity.  *Tips are the property of the employee*
> *whether or not the employer has taken a tip credit under section 3(m) of the*
> *FLSA.  The employer is prohibited from using an employee's tips, whether or not*
> *it has taken a tip credit, for any reason other than that which is statutorily*
> *permitted in section 3(m)*: *As a credit against its minimum wage obligations to the*
> *employee, or in furtherance of a valid tip pool*.  Only tips actually received by an
> employee as money belonging to the employee may be counted in determining
> whether the person is a "tipped employee" within the meaning of the Act and in
> applying the provisions of section 3(m) which govern wage credits for tips.[31]

Defendant argues that this regulation is invalid.  In *Chevron, U.S.A., Inc. v. Natural*

*Resources Defense Council, Inc.*,[32] the Supreme Court established a two-step process in

evaluating agency regulations.  First, the Court looks at "whether Congress has directly spoken to

the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for

the court, as well as the agency, must give effect to the unambiguously expressed intent of

Congress."[33]  If congressional intent is ambiguous, the Court proceeds to the second step in the

*Chevron* analysis to determine "whether the agency's answer is based on a permissible

---

[31] 29 C.F.R. § 531.52 (emphasis added).

[32] 467 U.S. 837 (1984).

[33] *Id*. at 842-43

construction of the statute."[34]  "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."[35]  Further, "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."[36]

Defendant argues that the regulation cannot survive step one of the *Chevron* analysis.  As set forth above, § 203(m) states that the tip credit provision does not apply

> with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.[37]

The revised regulation, however, states that "[t]ips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA."[38]  The regulation goes on to state that "[t]he employer is prohibited from using an employee's tips, *whether or not it has taken a tip credit*, for any reason other than that which is statutorily permitted in section 3(m)."[39]

---

[34]*Id*. at 843.

[35]*Id*. at 844.

[36]*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

[37]29 U.S.C. § 203(m).

[38]29 C.F.R. § 531.52.

[39]*Id*. (emphasis added).

This language runs contrary to the plain language of § 203(m).  A similar argument was addressed by the Ninth Circuit in *Cumbie*.  As the court stated there: "If Congress wanted to articulate a general principle that tips are the property of the employee absent a 'valid' tip pool, it could have done so without reference to the tip credit."[40]   Since Congress did not, the court "decline[d] to read the third sentence in such a way as to render its reference to the tip credit, as well as its conditional language and structure, superfluous."[41]

Two district courts have addressed the recent amendments to 29 C.F.R. § 531.52.  In *Oregon Restaurant and Lodging v. Solis*,[42] the United States District Court for District of Oregon examined the regulation in light of *Cumbie*.  The court in *Solis* found that *Cumbie* spoke directly to the issue addressed in the amended regulation and left no room for agency discretion.[43]  Thus, the court in *Solis* found the regulation invalid under the *Brand X* standard.

The court went on to state that, even if it were free to ignore *Cumbie*, it would reach the same conclusion.  "The text of Section 3(m) is clear and unambiguous: It imposes conditions on employers that take a tip credit but does not impose a freestanding requirement pertaining to all tipped employees."[44]  The court noted, as the court did in *Cumbie*, that Congress could have articulated a general principle that tips are the property of the employee without reference to the

---

[40]*Cumbie*, 596 F.3d at 581.

[41]*Id*.

[42]---F. Supp. 2d---, 2013 WL 2468298 (D. Or. June 7, 2013).

[43]*Id*. at *6.

[44]*Id*.

tip credit, but chose not to do so.  Further, the court "decline[d] to read Section 3(m) 'in such a way as to render its reference to the tip credit, as well as its conditional language and structure, superfluous.'"[45]  "The third sentence of Section 3(m) states that if an employer takes a tip credit, the employee must be allowed to retain all her tips, except where she participates in a 'valid' tip pool.  There would be no need to make such a statement if Congress intended that an employee always retain her tips."[46]

The court also considered the purpose and structure of the FLSA.  That court, like a number of others, reached the conclusion "that Congress has given employers a choice: either pay the full minimum wage free and clear of any conditions, or take a tip credit and comply with the conditions imposed by Section 3(m)."[47]  The new regulations, however, "prohibit the use of tips by an employer even when the employer does not take a tip credit."[48]  "In so doing, the new regulations do not protect covered workers from substandard wages or oppressive working hours, nor do they vindicate any of the FLSA's specific statutory protections."[49]

In *Solis*, the Department of Labor argued, as Plaintiffs do here, that the regulation filled in a gap left by Congress.  The court rejected this argument, finding that "the intent of Congress in

---

[45]*Id*. at *7 (quoting *Cumbie*, 596 F.3d at 581).

[46]*Id*.

[47]*Id*.; *see also Chung*, 246 F. Supp. 2d at 230 ("Congress gave employers of tipped employees a simple choice: either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.")

[48]*Solis*, 2013 WL 2468298, at *7.

[49]*Id*.

Section 3(m) is clear: Congress intended to impose conditions on employers that take a tip credit but did not intend to impose a freestanding requirement pertaining to all tipped employees."[50] Because the intent of Congress was clear, there was no gap to be filled.

A case decided recently in the Southern District of New York supports the conclusions of *Cumbie* and *Solis*. In *Trinidad v. Pret A Manger (USA) Limited*,[51] the court addressed the tip pooling claim in light of a motion for conditional certification. The court noted that "under a consistent body of case law, those FLSA conditions [concerning tip pooling] apply only when the employer pays the employee below minimum wage and relies on a tip credit to supplement that wage."[52] Thus, "an employer's failure to abide by the requirements the FLSA sets for tip-pooling violates the FLSA only if, without the tip credit, the employee's compensation would fall short of the minimum wage."[53] In *Trinidad*, since the employees were paid above the minimum wage and the defendant did not rely on a tip credit, the court refused to conditionally certify a class on this issue.

The plaintiffs in *Trinidad* relied on the recently amended Department of Labor regulations. Though the court did not "resolve this issue definitively," the court found persuasive

---

[50]*Id*. at *8.

[51]2013 WL 3490815 (S.D.N.Y. July 11, 2013).

[52]*Id*. at *11.

[53]*Id*.

16

the argument that the "regulations are contrary to the plain language of § 203(m)."[54]  That court

stated:

> Had Congress intended to federalize tipping practices— *i.e.*, to mandate
> generally that tips are the property of the employee absent a valid tip pool—it
> could and presumably would have expressed this intention without keying the
> tip-pooling requirements to the tip credit.  Reading § 203(m) to implicitly impose
> such a mandate would render the FLSA's references to tip credits superfluous.
> Put differently, contrary to DOL's regulation, § 203(m)'s silence regarding
> employers' use of tips when no tip credit is taken is not a "gap" in the statute left
> to be filled, so much as an area of workplace conduct unaddressed by a statute
> concerned with a different problem entirely: assuring the payment of minimum
> compensation to employees.[55]

Based upon this reasoning, the court was "highly skeptical that DOL's regulations

permissibly construe the statute."[56]  Because of this, and the fact that the defendant paid its

employees the minimum wage without taking into account a tip credit, the court declined to

conditionally certify a class as to the tip pooling claim.

The Court finds the reasoning of *Cumbie*, *Solis*, and *Trinidad* to be persuasive.  Plaintiffs,

like the parties in those cases, argue that all tips belong to them.  Plaintiffs rely on 29 C.F.R. §

531.52 to support that contention.  However, the regulation runs contrary to the plain language

and structure of § 203(m).

Section 203(m) permits an employer to take a tip credit and imposes restrictions on an

employer that does so.  One such restriction is that the employee retain all tips.  That provision,

however, ties the requirement that the tips be retained by the employee to the taking of a tip

---

[54]*Id.* at *13.

[55]*Id.*

[56]*Id.* at *14.

credit by an employer.  It does not create a freestanding requirement pertaining to all tipped employees.  Had Congress wanted to create such a requirement it could have easily mandated that all tips belong to the employee, without tying it to a tip credit.  Congress did not impose such a requirement.  Rather, Congress created a situation where employers can "either pay the full minimum wage free and clear of any conditions, or take a tip credit and comply with the conditions imposed by Section 3(m)."[57]  The regulations take away this Congressionally created choice and mandate that tips are property of the employee.  This construction cannot be supported by § 203(m).  Further, as explained in *Solis*, the regulations "do not protect covered workers from substandard wages or oppressive working hours, nor do they vindicate any of the FLSA's specific statutory protections."[58]  Based upon these considerations, the Court finds the regulations invalid under *Chevron*.

3.      *Common Law Claims*

In addition to their FLSA claims, Plaintiffs bring common law claims for conversion, unjust enrichment, and quantum meruit.  The allegations to support these claims stems from Plaintiffs' assertion that Defendant unlawfully retained tips that belong to them.  Defendant argues that these claims are preempted by the FLSA and otherwise fail.

> [T]he FLSA sets forth a broad and exclusive enforcement scheme to remedy wage and hour violations in the labor law context.  Accordingly, a number of courts have held that where a state common law claim is based upon the same facts as a

---

[57]*Solis*, 2013 WL 2468298, at *7.

[58]*Id.*

FLSA cause of action, the duplicative state-law claim is preempted by the FLSA and must be dismissed.[59]

This Court has expressed agreement with this general principle.  In *Johnston v. Davis Security, Inc.*,[60] the Court held that state common law claims, including claims for conversion and unjust enrichment, were preempted because they were "based on the same facts and circumstances as [the plaintiff's] FLSA claims."[61]

The same is true here.  All of Plaintiffs' common law claims concern the alleged failure of Defendant to pay Plaintiffs tips that Plaintiffs assert belonged to them.  These same factual allegations make up a portion of Plaintiffs' FLSA claim.  Therefore, they are preempted.

Plaintiffs argue that Defendant "cannot argue in one section of its supporting memorandum that the FLSA does not apply because plaintiffs are exempt, and in another section of its supporting memorandum that the FLSA does apply and plaintiffs' common law claims are preempted."[62]  This argument oversimplifies Defendant's Motion for Partial Summary Judgment. Defendant does not argue, as Plaintiffs suggest, that it is completely exempt from the FLSA. Rather, Defendant argues that it is exempt from the overtime provisions of the FLSA. Defendants concede that they are subject to the FLSA in certain respects, but argue its practice concerning tips does not violate the FLSA.  Therefore, Defendant's argument that Plaintiffs'

---

[59]*DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 530 (E.D.N.Y. 2011) (collecting cases).

[60]217 F. Supp. 2d 1224 (D. Utah 2002).

[61]*Id*. at 1228.

[62]Docket No. 21, at 16.

common law claims are preempted is not inconsistent with its argument concerning Plaintiffs'
FLSA claims.

Even if Plaintiffs' common law claims were not preempted, they would fail on the merits.
All of Plaintiffs' common law claims are based on the notion that Plaintiffs were entitled to
receive tips and that Defendant unlawfully withheld the tips to which Plaintiffs were entitled.
The success of each of these claims hinges on Plaintiffs' ability to show entitlement to these tips.
The only alleged entitlement to these tips derives from the FLSA.  For the reasons discussed
above, Plaintiffs have failed to prove that they were, in fact, entitled to the tips under the FLSA.
Therefore, Plaintiffs' common law claims must fail.

B.       RULE 56(d) MOTION

Fed. R. Civ. P. 56(d) states that "[i]f a nonmovant shows by affidavit or declaration that,
for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1)
defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to
take discovery; or (3) issue any other appropriate order."[63]

"A party seeking to defer a ruling on summary judgment under Rule [56(d)] must 'file an
affidavit that explain[s] why facts precluding summary judgment cannot be presented.  This
includes identifying the probable facts not available and what steps have been taken to obtain
these facts.'"[64]  "[T]he nonmovant also must explain how additional time will enable him to

---

[63] Fed. R. Civ. P. 56(d).

[64] *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1308 (10th Cir. 2007) (quoting
*Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006)) (alteration in original).

rebut movant's allegations of no genuine issue of fact."[65]  A party may not invoke Rule 56(d) "by simply stating that discovery is incomplete but must 'state with specificity how the additional material will rebut the summary judgment motion.'"[66]

Plaintiffs seek a continuance under Rule 56(d), arguing that they have not had an opportunity to conduct discovery as to their driving records.  Though Plaintiffs are correct that no discovery has taken place, the Court notes that Plaintiffs did not dispute the driving records provided by Defendants.  Further, the amount of time that Plaintiffs spent driving interstate is something that is within their own personal knowledge.  Thus, Plaintiffs would know of any disputes they may have had with Defendant's records and could have brought those disputes to the attention of the Court.

Plaintiffs next argue that they have not had the opportunity to conduct discovery regarding whether the retained tips were "service fees."  This argument misstates Defendant's argument on summary judgment.  Defendant has not argued that the tips were service fees.  Rather, Defendant accepts as true Plaintiffs' allegations that these fees constitute tips.  Thus, there is no need to conduct discovery on whether the funds at issue constitute tips or service fees.  Based on this, the Court will deny Plaintiffs' Rule 56(d) Motion.

---

[65]*Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) (quotation marks and citation omitted).

[66]*Libertarian Party of N.M.*, 506 F.3d at 1308-09 (quoting *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000)).

C.      MOTION FOR ORDER PERMITTING PLAINTIFFS TO PROCEED AS A
        COLLECTIVE ACTION AND TO FACILITATE NOTICE

Plaintiffs seek an order permitting them to proceed as a collective action.  Under the FLSA, an employee may bring a collective action on behalf of "similarly situated" employees.[67] The Tenth Circuit has approved a two-step approach to determine whether putative class members are similarly situated.[68]  "In utilizing this approach, a court typically makes an initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'"[69]  "[A] group of potential FLSA plaintiffs is 'similarly situated' if its members can demonstrate that they were victims of a common policy, scheme, or plan that violated the law."[70]  At this early stage, "a court 'require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'"[71]  This is a lenient standard.[72]

As discussed above, the Court will enter summary judgment on all of Plaintiffs' FLSA claims except the claim that Defendant violated the minimum wage provisions of the FLSA.  In the Declarations provided by Plaintiffs in support of their Motion, both Plaintiffs admit that they

---

[67]29 U.S.C. § 216(b).

[68]*Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

[69]*Id.* (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).

[70]*Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012).

[71]*Thiessen*, 267 F.3d at 1102 (quoting *Bayles v. Am. Med. Response of Colo., Inc.*, 950 F. Supp. 1053, 1066 (D. Colo. 1996)).

[72]*Id.* at 1103.

were paid above the minimum wage.[73]  Based upon these admissions, Plaintiffs have failed to

make even a modest showing that they were the victims of a common policy or plan that violated

the law.  Therefore, Plaintiffs' Motion must be denied at this time.  However, if Plaintiffs are

eventually able to provide evidence that would show a violation of the minimum wage provision,

Plaintiffs may reassert their request for collective action.  Thus, the Motion will be denied

without prejudice.

IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Partial Summary Judgment (Docket No. 18) is

GRANTED.  It is further

ORDERED that Plaintiffs' Rule 56(d) Motion (Docket No. 24) is DENIED.  It is further

ORDERED that Plaintiffs' Motion for Order Permitting Plaintiffs to Proceed as a

Collective Action and to Facilitate Notice (Docket No. 15) is DENIED WITHOUT PREJUDICE.

Pursuant to Docket No. 13, counsel are directed to file a Stipulated Motion to Amend

Scheduling Order and Proposed Scheduling Order within fifteen (15) days of this Order.

DATED   August 26, 2013.

BY THE COURT:

TED STEWART
United States District Judge

---

[73]Docket No. 15, Ex. A, ¶¶ 6-7; *Id*. Ex. B ¶¶ 6-7.